and counsel may begin whenever you're ready. May I please the court, counsel? My name is David Anthony. I represent the appellant, Larry Gene Tilcock. In the proceedings below, the district court certified 12 issues for review before this court. Unfortunately, I only have 15 minutes, so I'm going to be concentrating on the sentencing issues in Mr. Tilcock's case. The first issue that I'd like to address is the issue of the district court's abuse of its discretion in failing to grant Mr. Tilcock an evidentiary hearing on his claims of ineffective assistance of trial and appellate counsel. Specifically, in State and Federal court, Mr. Tilcock alleged that trial counsel failed to investigate his prior convictions that were used against him and failed to make appropriate objections at the sentencing hearing. The State's notice of habitual criminal treatment alleged eight felony strikes against Mr. Tilcock. Of those eight felony strikes, trial counsel unreasonably failed to object to a 1998 burglary conviction from California on the grounds that there was no such conviction. Additionally, trial counsel failed to object to a 1972 felony forgery conviction on the grounds that it was only a misdemeanor. If trial counsel would have reviewed the pre-sentence report, he would have seen that that conviction was actually adjudicated as a misdemeanor and, therefore, could not be used as a qualifying felony against Mr. Tilcock. Not only did trial counsel fail to make appropriate objections, but he also actively advocated against his own client by introducing two nonexistent felony convictions at the sentencing hearing. Specifically, trial counsel introduced a felony conviction from 1990 for burglary and a felony conviction from 1994 for burglary that didn't exist at all and that there was no record for. Additionally, trial counsel improperly stipulated that all of the eight listed strikes were properly proven by a judgment of conviction. However, if trial counsel would have held the State to their burden of proof, as I explained previously, the State wouldn't have been able to make their burden of proof because the prior convictions were based upon nonexistent convictions and misdemeanor convictions that couldn't have been proven. Additionally, trial counsel failed to object to the State's violation of its plea agreement. In a burglary case that happened one week before this case, trial counsel put on the record that the State had agreed not to argue for a particular sentence during this habitual criminal proceeding. The State immediately violated their plea agreement, and they strenuously argued that Mr. Tilcock should receive a sentence of life without parole. And there was no objection by trial counsel to any of this stuff coming in. Our position, Your Honors, is that the clearest and the easiest way to adjudicate this case is to remand to the district court for an evidentiary hearing. Specifically, we can show that Mr. Tilcock did not fail to develop the facts that he's trying to develop now in State court. He filed a motion for an evidentiary hearing in State court, which was denied. And also, it's noteworthy that the process that occurred in State court was an ex parte process where he was not appointed counsel, he was not present, and the State and the judge had an ex parte proceeding where there were arguments and findings of fact and conclusions of law drafted and signed by the judge without Mr. Tilcock being present or represented by counsel. The Nevada Supreme Court has subsequently held that that procedure is unconstitutional and that it violates procedural due process to have an ex parte hearing where the petitioner is not allowed to be present. Because the fact-finding process in State court is deficient, the controlling authority from this Court holds that there is an intrinsic challenge that we can make to the fact-finding process. If we can make that challenge to the fact-finding process, it means that we can show that there is no deference that is owed to any of these so-called findings of fact and conclusions of law of the State court, because it occurred without a hearing and it occurred ex parte in a hearing where the petitioner was not allowed to be present and was not allowed to argue. From that point, it's very easy to see that Mr. Tilcock was entitled to a hearing. Under Federal law, under this Court's precedence, Mr. Tilcock must only make a colorable claim that he is entitled to relief to be entitled to a hearing. We submit that based upon the five errors that I just mentioned about trial counsel's ability to adequately investigate, prepare, and to make objections at the sentencing hearing, that he has raised a colorable claim that would entitle him to relief. And he has never received an evidentiary hearing in State court or in Federal court, despite his best efforts to do so. And additionally, there is no deference that is owed to the State court proceedings due to this fact. Mr. Tilcock has also alleged that his appeal counsel was ineffective. Specifically, Mr. Tilcock alleged that he provided his attorney one year after the trial with a statement by an individual named Norbert Wayne. Mr. Tilcock was suing the Metropolitan Police Department because they shot him. And during discovery, he obtained discovery of a statement from an impartial bystander. In Mr. Wayne's statement, Mr. Wayne said that he saw Mr. Tilcock's car going down the street, and he saw two plainclothes police officers on the other side of the street, on the other side of the block. Mr. Tilcock was charged in the guilt phase with attempted murder of those two police officers, and he was acquitted of those charges by the jury. Our argument is that, well, a couple of arguments. First of all, there's a key finding by the Federal court below. The Federal court held below that it disagreed with the State court's determination that the statement was not exculpatory. I think that's a very important finding. Secondly, both the State court and the Federal court misapprehended the prejudice that Mr. Tilcock suffered. They only analyzed prejudice as to prejudice in the guilt phase. They didn't analyze prejudice as to prejudice in the penalty phase when the trial judge sentenced him as a habitual criminal to life without parole. And they also didn't assess prejudice for its effect on direct appeal. On direct appeal, Mr. Tilcock raised an Eighth Amendment challenge to his sentence on the grounds that it was disproportionate. When he raised that challenge, the Nevada Supreme Court rejected it because they said, you endanger the lives of police officers so we don't feel bad for you, so you deserve everything you're going to get. And that is why the failure to disclose the Wayne statement was material at sentencing and it was material on direct appeal. Neither the State court nor the Federal court assessed the prejudicial impact of the failure to disclose that statement on the sentencing hearing or on the direct appeal. Kennedy, does that have to do with your count two? Excuse me, Your Honor? Is that the count two argument? The count is actually the ineffective assistance of appeal counsel argument, which I believe is ground 13. But did that deal with count two of the actual crime that he was charged with? Yes. It dealt with counts two and three which were attempted murder. And he was acquitted of that? Yes, he was. So the prejudice is where if he won on the count? The prejudice is at the sentencing hearing and on direct appeal. The prejudice is because we have a sentencing hearing which gives the court the discretion to impose a wide variety of sentences, a determinant sentence, life with parole or life without parole. And even if he's acquitted of attempted murder, the fact that he threatened the lives of two police officers who were trying to apprehend him seems to be really aggravating to me. And the fact that the State failed to disclose this police statement that would have exculpated him of that would have been relevant not just because he would have been acquitted of attempted murder. Was acquitted. Excuse me. He was acquitted of attempted murder. But it would have been material to the district court's sentencing determination. As anyone who's been a sentencing judge knows, you look at the aggravating facts of the nature of the crime itself, and the judge imposed the stiffest sentence possible, which is that he got life without parole for an attempted burglary. We can't just say that it didn't affect the district court during the sentencing. And also, as I meant to say. How do you say it did affect? Well, it. I'm having a little problem getting. He's actually acquitted of count two. That is, as far as the sentencing court is concerned, this didn't happen. They can't use any part of it. So where? I don't get the tie of prejudice. Just because the prosecutor was not able to make out a prima facie case for all the elements of attempted murder during the guilt phase doesn't mean that the district court, in looking at this issue at sentencing, wouldn't say that maybe the police officers' lives were in danger. Maybe the jury found that Mr. Tilcock simply didn't have the intent. But still, there's the issue of danger. And if you want proof that it was prejudicial, all you have to do is read the Nevada Supreme Court's decision on direct appeal, because that's why they rejected his Eighth Amendment claim, is because he threatened the lives of police officers. Disclosure of this statement would have undermined that finding and would have completely turned the evidentiary picture on its head. Again, this is an issue where he alleged this issue in state court, and he alleged the issue in federal court. He got no hearing, even though he requested one, in state court and federal court, and the fact-finding process was defective because it was ex parte and he was not present. Additionally, appellate counsel was ineffective because he failed to challenge the habitual criminal finding that was made by the court. He – if you look at the district court's sentencing decision, it was very clear and very short and cursory. The district court made no determination about whether or not it was considering the strikes from 1972 and 1973. There was binding law at the time by the State Court of Nevada that said if you have nonviolent convictions that are over 20 years old, the district court cannot consider them in connection with a adjudication of habitual criminality. Appeal counsel raised no objection on those grounds as to whether the district court considered those stale convictions. Also, there was an allegation that appeal counsel was ineffective for appealing the – the finding of the invalid 1998 conviction, which doesn't exist and there's no record for it. Additionally, there was no determination by the district court as to whether it properly grouped strikes number 2, 4, 5, and 6 on the grounds that they arose from one transaction or occurrence. Under binding State law, if you have multiple arrests and convictions that come from one transaction and occurrence, that only counts as one strike. So what we need to do is to compare the sentencing hearing that occurred with the one that should have occurred if counsel was being effective. With the one that did occur, we had ten qualifying strikes. If we look at whether trial counsel and appeal counsel would have performed effectively, I've narrowed it down to two strikes. One felony conviction in 1987 for attempted possession of a motor vehicle and this grouping of burglary convictions from 1979 and 1980, which were based on one transaction. Looking at the evidentiary picture that way, Mr. Tilcock isn't even eligible as a habitual criminal. And even if this Court doesn't find in my favor as to every argument that I've raised, and even if this Court finds that there were three qualifying convictions, the Nevada statutes allow a substantial amount of discretion with the district court. The district court could have dismissed it, it could have imposed a term of definite years, it could have imposed a life sentence with parole after ten years, or it could have done life without which it did. Our argument is that there's a reasonable probability of a more favorable outcome if trial counsel would have performed effectively and would have investigated the priors and would have made appropriate objections. Thank you. I'll reserve the rest of my time for rebuttal. You may do that. May it please the Court. My name is Conrad Hafen, and I represent the Respondent in this matter. There are three reasons why this Court should affirm the district court's Order 109 appellate's habeas petition. First, the district court correctly applied EDPA's deferential standard in Claims 1, 3, 11, 12, and 13. Second, when reviewing de novo Claims 2, 5, 6, 8, 9, and 10, the district court applied the correct factual presumption and promptly denied these claims as being factually deficient. Third, the district court correctly upheld Nevada's procedural default statute relating to non-capital cases under the Vane case. In regards to the appellate's Strickland or trial issues, he specifically raises the issue of ineffective assistance of counsel. This was a claim brought forth before the district court, federal district court, under Claim Number 11. In that claim, the district court properly evaluated the Nevada Supreme Court's decision in applying Strickland. As this Court knows under 2254 under EDPA, a federal court is obligated to give great deference to a lower court's decision when it is not contrary to or conflicts with a federal law. Under Strickland, as this Court is aware, there's a two-prong analysis. First, was trial counsel's performance at trial deficient below a reasonable standard? And second, was that deficiency prejudicial to the defendant during the course of the trial? The Nevada Supreme Court analyzed that, applied the Strickland standard, and determined that Mr. Tilcock had not met both Strickland prongs. Let me ask you a question about how to apply that standard in the context of looking at the existence or nonexistence of prior convictions. It seems to me, at least just theoretically, that there could be lots of strategic reasons to call a witness, not call a witness, cross-examine, not cross-examine. But if there were available arguments to eliminate prior convictions from consideration in sentencing as a habitual criminal, is there ever a legitimate tactical or strategic reason for counsel not to pursue that? Well, I'm sure there are. Why? Well, in this particular case. Right now, I want to sort of get a theoretical construct in my head about whether the unreasonable performance by counsel might look different in the context of listing out prior convictions, yes or no, do they qualify. What would be, if there were an available argument to eliminate a prior conviction from consideration at sentencing by defense counsel, what legitimate reason in theory could there ever be for not bringing that forward? Well, I'm sure that defense counsel could argue that prior convictions are stale, that they're inapplicable, that as appellate counsel has pointed out, I'm sure that you could probably argue that there's a grouping of prior felony convictions that should all count as one. I'm sure those are all theoretically arguments that could have been made at time of sentencing or even during trial in an attempt to try and preclude those prior convictions. But you have to realize that in this case, Mr. Kilcock testified himself, and as a result he was subject to cross-examination. And that's a whole set of, or a different set of evidentiary rules. As a result of that, he was subject to impeachment. Once he crosses that line, then the prosecutor has every legitimate right to impeach him on his prior felony convictions, and at a minimum he was impeached on three out of four felonies. So that evidence was already out there, and that was Mr. Kilcock's choice to go on the stand and testify and be subject to impeachment. So even if you take away most of the felony convictions, you still have at least three out of those four. That answers whether he's eligible, but is opposing counsel correct that the sentencing court under Nevada law would have had other sentencing options besides the one that was chosen? Oh, absolutely. In fact, under Nevada law, the court has the discretion to apply the habitual criminal. Even though a prosecutor may assert that, the trial court certainly doesn't need to impose the habitual criminal status on the defendant and sentence him, as in this case, to three consecutive life terms without the possibility of parole. But that's a discretionary function. They've argued that it's a violation of Apprendi, and we disagree with that. That's a separate question from the one we're pursuing right now, which is what is the obligation of defense counsel when it comes to the sentencing portion of such a proceeding? Well, again, as I pointed out, I'm sure defense counsel's obligation at the time of sentencing would be to try and preclude those prior felonies, either trying to argue that maybe they don't meet constitutional muster and so they're not legitimate or that they're stale. Those would all be arguments I'm sure that defense counsel could make at time of sentencing. In regard to the other claims, under Claim 1, Petitioner claims that the prosecutor's reference to prior convictions violated his due process rights. The Nevada Supreme Court applied the harmless error standard under Breck, and again determined that since Mr. Tillcock had testified at time of sentencing and was subject to cross-examination and those prior convictions were already brought out, that harmless error occurred in that regard, and as a result denied that claim. The district court, federal district court, reviewed the Nevada Supreme Court's determination in the applicability of Breck and determined that, in fact, they did apply federal case law in a reasonable manner. As to Claim 3, again, the petitioner claims that the state violated his rights on the insufficiency of the evidence because he claims that they were not able to prove that he actually entered the condominium. In this particular case, again, we get back to Mr. Tillcock's testimony, and it's indisputable that during his testimony he testified that he had the intent to break into the condominium and take property. In addition to that, there was testimony at time of trial by the owner, Denise Riley, the owner of the condominium that indicated that the only way that the window could be lifted up is if somebody had broken into the condominium and undid the latch. She testified that she always locks the window. So the claim that there was insufficient evidence to meet the entry element is unfounded. In fact, the Nevada Supreme Court, even though they don't refer to Jackson v. Virginia, did apply the correct analysis in applying that there was substantial evidence on that particular element at time of trial. And, of course, this Court knows you're going to take the evidence and view it in light most favorable to the State to determine whether a reasonable trier of fact would be able to find that on that evidence the State had met its burden beyond a reasonable doubt. And, again, the Federal District Court looked at that decision by the Nevada Supreme Court and determined that it was not an unreasonable application of the Jackson case. Finally, as to Grounds Claim 12, Mr. Kilcock has claimed that he received ineffective assistance of counsel through appellate counsel. Again, he claims that appellate counsel failed to raise numerous issues on appeal to the Nevada Supreme Court. The Strickland Standard applies to appellate counsel, but Mr. Kilcock also has to show that those claims, if raised on appeal to the Nevada Supreme Court, had a reasonable likelihood of success. Again, when the Nevada Supreme Court applied the Strickland Standard, found that those issues would not have had a reasonable likelihood of success on appeal, and the Federal District Court, in reviewing that, made that same determination and held that Strickland was not applying unreasonable by the Nevada Supreme Court. Finally, in regard to the deferential claims, Claim 13, Mr. Kilcock claims that the trial court violated his rights in violation of Apprendi. And I touched a little bit on this earlier. In Apprendi, there has to be a fact-finding process in order for Apprendi to apply. A good example of that, at least under Nevada law, there is a statute that requires an enhanced penalty if an individual sells a controlled substance within 1,000 feet of a school. Now, if an individual was charged with that type of a crime under Apprendi, the jury would have to make the determination as to whether the drugs were actually sold within 1,000 feet of a school. The judge would not be entitled to make that determination at time of sentencing. That would be a fact-finding approach and would be in violation of Apprendi if a judge did that. In this case, however, the habitual criminal statutes allow the judge simply to use his or her discretion. There is no fact-finding process involved, irrespective of how Mr. Kilcock describes or argues how the habitual statute is applied in Nevada. It is a discretionary function. In this particular case, the court used his discretion. The court determined that Mr. Kilcock was a prime candidate for the habitual criminal statute, particularly in light of the fact of his long sordid history of burglary, prior felony convictions. And in addition to that, what's I think imperative in this case is within hours after being released on another burglary charge, Kilcock is back committing another burglary. And as the facts indicate, the Metro Police Department had a specific unit that would track repeat offenders. And Mr. Kilcock met them. Kennedy. Actually, it's a stronger argument because the statute says that he shall be a habitual unless the district judge decides not to enforce it or the prosecution doesn't charge him. Right. That's right. It's a discretionary. Unless the district court or the prosecution does something, it happens. He's a habitual offender. I have another question I want to ask you. I haven't read this case. I'm sure you did the usual check that lawyers do before they come over here and check to see what cases have been cited recently. Well, I'm filling in for Mr. Gover, so Mr. Gover was the one that actually did the brief. Beg your pardon? Mr. Gover was the one that actually did the brief on this case. He had a trial, so I had to fill in for him. Well, we assure you that you did a competent job getting ready. And you did check. There's a case of Butler v. Curry that was filed on the 9th of June, dealing with this issue of the Apprendi issue, and I'm wondering whether or not I haven't read the case, and maybe you have, to tell us whether or not it will change our view. It's a Ninth Circuit case that just came out.  We've had a chance to. You haven't reviewed it. Yeah. I haven't reviewed it. Okay. If there are no other questions, then that concludes my report. Thank you. Thank you. I might ask you the same question. Do you have any information on Butler v. Curry? To be candid with Your Honor, I do not. What I decided to do here today, opposing counsel brings up several different arguments and several different claims. Well, you still have the claim of the Apprendi issue.  You haven't waived that. I do not waive it. And this deals specifically with the Apprendi issue by our circuit on a case that has recently filed. So that's why I wanted to ask you whether you're aware of it. That's all right. We'll read it and take a look at it. And there's also the COA case as well. What I did today, Your Honors, is I made a strategic decision to focus on what I believe is the clearest and easiest grounds for reversal. I'm not going to address any of the other claims that he brought up, because I think it's the easiest case to make that Mr. Tillcock was entitled to a hearing on ineffective assistance of trial counsel. One of the things that I'd like to talk about first is that there is no dispute from the respondent on the material facts here, which is that trial counsel failed to object to invalid convictions, and he made up convictions that didn't exist. As Judge Graber noted, there can't be any strategic decision for counsel not to make valid objections. If that's true, then he was entitled to a hearing on that claim, and he's never been given a hearing ever in State court or in Federal court. Opposing counsel mentioned the deferential standard of review, but he never addressed the arguments that I made, that the fact-finding process was defective because it was done ex parte, and it was a violation of procedural due process. And he also moved for an evidentiary hearing but didn't get one. Under controlling circuit authority from this Court, the case is Taylor v. Maddox. The side is 366 F. 3rd 998. They talk about intrinsic challenges to the fact-finding process. If you can prove that there's an intrinsic defect in the fact-finding process, there's no deference owed to the State court, and we're allowed to get an evidentiary hearing de novo in Federal court. And that's what I'm asking for. Thank you, counsel. You've completed your time. The arguments of both parties have been helpful in this case. We appreciate them. And we will submit this case and take a short break for about 10 minutes.
judges: Wallace, Graber, Ezra